**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Edward CZUPRYNSKI, Defendant–**
**Appellant.**

**No. 93–1079.**

United States Court of Appeals,
Sixth Circuit.

Argued July 2, 1993.

Decided Nov. 9, 1993.

Janet L. Parker, Asst. U.S. Atty. (argued and briefed), Bay City, MI, for plaintiff-appellee.

F. Randall Karfonta (argued and briefed), Mogill, Posner & Cohen, Detroit, MI, for defendant-appellant.

Before: KENNEDY and MARTIN, Circuit Judges; and WISEMAN, District Judge.*

BOYCE F. MARTIN, JR., Circuit Judge.

Edward Czuprynski appeals his conviction and sentence for possession of 1.6 grams of marijuana, arguing that the search warrant was invalid because the supporting affidavit was stale and that the magistrate was not neutral and detached. Czuprynski also argues that the district court improperly denied him an evidentiary hearing on his claim that this case involved selective prosecution. Czuprynski argues that his sentence, imposed as the result of several upward departures by the district court, was improper.

---

* The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

We believe that the information submitted in support of the application did not provide probable cause that contraband or evidence would be found in the search, and that no reasonable officer could conclude that probable cause existed to execute the search. Accordingly, we reverse.

Czuprynski is a licensed attorney who does a great deal of criminal defense work in the Bay City, Michigan area. Czuprynski employed Judith Sawicki as an associate with his law firm until February 21, 1992, when he fired her. After she was fired, Sawicki filed assault charges against Czuprynski. After the trial in the instant case, the trial court in the assault case acquitted Czuprynski, stating that Sawicki was "obviously a liar."

In early March, Bay County prosecutors and Sawicki attempted to obtain a search warrant for Czuprynski's office, apartment, and car. In support of the warrant application, Sawicki submitted an affidavit in which she stated that several of her books and papers had been at the office since she was fired. Evidence indicates that Assistant Bay County Prosecutor Tim Kelly presented the application to two district judges of the 74th District Court in Bay City, Michigan, but that both judges refused to sign the warrant.

On March 18, 1992, Bay County officials obtained and executed a search warrant at Czuprynski's home and office. The warrant application rested primarily on another affidavit by Judith Sawicki in which she alleged that Czuprynski regularly used marijuana. The warrant authorized a search for marijuana or other controlled substances, drug paraphernalia, proceeds used in connection with the sale or purchase of controlled substances, and other evidence of the use, sale, or purchase of marijuana or other controlled substances. Sawicki's affidavit alleged that she had seen Czuprynski smoke marijuana in his office almost every day, and that she had previously smoked marijuana with him. The affidavit did not recount any specific dates for these events. Although Sawicki also stated in her affidavit that she had purchased marijuana from Czuprynski, she stated that she made this purchase "in January or February, 1992, sometime after Christmas." Moreover, the affidavit did not support an inference that Sawicki had seen Czuprynski since the date she had been fired, February 21, 1992, almost a month prior to the affidavit. Officer Tait also submitted an affidavit in support of the warrant application. Tait's affidavit, however, showed no evidence corroborating Sawicki's affidavit nor any evidence supporting Sawicki's reliability or credibility in any way. Finally, two previous search warrants and returns, one from 1974 and one from 1983, were submitted to support the March 1992 application. Although each search uncovered evidence of marijuana usage, Czuprynski was acquitted by a jury of charges of possession of marijuana after the 1983 search. Magistrate Philip Boes of the 74th District Court signed the warrant authorizing the March 1992 search.

Before Tait obtained the warrant, Assistant Prosecutor Kelly contacted Greg Tait, an officer with the Michigan Department of State Police in Bay City, about Sawicki's allegations, and it was Tait's understanding that other police departments had declined to involve themselves with Sawicki's complaint. After interviewing Sawicki, Tait and Kelly drafted Sawicki's affidavit. After telling Tait that no judges were available to issue the warrant at that time, Kelly suggested that Tait submit the warrant application to Magistrate Boes. Evidence in the record also indicates that Tait initially submitted the application to one of the judges of the 74th district who had previously declined to sign the records warrant, and that the judge again declined to issue a warrant. Moreover, the record also indicates that Magistrate Boes had previously served as the Bay County purchasing agent at the time Czuprynski was serving as the Bay County auditor and that Czuprynski had attempted to have Boes fired from that position. Tait was also aware at this time that "hard feelings" and "disputes" existed between Czuprynski and the Bay County Prosecutor's office.

Tait executed the warrant at Czuprynski's office and found small amounts of marijuana residue, seeds, and marijuana leaves. The search at Czuprynski's apartment revealed similar items. The laboratory analysis of these findings by the Michigan Department

of State Police Forensic Science Division revealed a total of 1.6 grams of marijuana.

On May 19, 1992, Czuprynski was indicted by a federal grand jury on a single charge of possession of marijuana, a violation of 21 U.S.C. § 844(a). Czuprynski filed a motion to suppress the evidence seized during the search of his office and home, arguing that the magistrate who had issued the warrant was not neutral and detached and that Sawicki's affidavit was insufficient to establish probable cause for the search. Czuprynski also argued that the good-faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), did not prevent application of the exclusionary rule in this case because Sawicki's affidavit was facially deficient and no reasonable officer could conclude that the warrant was supported by probable cause. The district court denied the motion to suppress, finding that probable cause supported issuance of the warrant and that the *Leon* exception prevented exclusion of the evidence obtained during the search in this case.

Czuprynski was convicted on the single count of marijuana possession. On January 6, 1993, the district court sentenced Czuprynski to fourteen months imprisonment. The presentence report calculated Czuprynski's base offense level to be level four. The report calculated Czuprynski's criminal history to be Category I based on the assessment of one point for a conviction of Filing a False Nominating Petition for which Czuprynski paid a $100 fine. The sentencing guidelines range for a base offense level of four and Criminal History Category I is zero to six months imprisonment. Despite the calculated sentencing range, however, the district court enhanced Czuprynski's base offense level by two points for obstruction of justice, even though the district court acknowledged at sentencing that none of Czuprynski's actions materially hindered any aspect of the investigation. The court also increased Czuprynski's Criminal History Category from level I to level III, finding that a 1974 conviction for possession of marijuana and a 1984 acquittal on charges of possession of marijuana warranted an increase in this category. The court also ordered Czuprynski to pay a fine of $2,500; the costs of investigation and prosecution, an amount totalling $2,000; and supervision charges at the rate $115.30 per month for his supervised release.

Czuprynski filed this timely appeal. We find that the search warrant issued by Magistrate Boes was not supported by probable cause. We also believe that the good-faith exception discussed in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, does not apply to the circumstances in this case. Accordingly, we reverse.

■ A fundamental principle of our constitutional jurisprudence is that a warrant to search property in which the owner has a reasonable expectation of privacy shall not be issued absent a sufficient basis for finding probable cause to believe that contraband or evidence is located in a particular place. *See Aguilar v. Texas*, 378 U.S. 108, 115–16, 84 S.Ct. 1509, 1514–15, 12 L.Ed.2d 723 (1964). *See also Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). We recognize that a magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). "Deference to the magistrate, however, is not boundless." *Leon*, 468 U.S. at 914, 104 S.Ct. at 3416. The Supreme Court has consistently stressed that reviewing "courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Gates*, 462 U.S. at 239, 103 S.Ct. at 2333. Finally, "courts have considerable discretion in conforming their decisionmaking processes to the exigencies of particular cases." *Leon*, 468 U.S. at 924–25, 104 S.Ct. at 3421–22. As such, a reviewing court is free to resolve a particular fourth amendment question before turning to the issue whether an officer executed a warrant in good faith. *Id.* at 925, 104 S.Ct. at 3422.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329. In *Gates*, *id.* at 238, 103 S.Ct. at 2332, the court abandoned the "two-pronged" analysis established in *Aguilar*, 378 U.S. at 114–15, 84

S.Ct. at 1513–14, and *Spinelli*, 393 U.S. at 416, 89 S.Ct. at 589, that an affidavit in support of a search warrant application must demonstrate both the veracity and reliability of the informant and the informant's basis of knowledge in making the affidavit. Rather, the court adopted a totality-of-the-circumstances analysis for determining the existence of probable cause. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. Nonetheless, "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Id.* at 230, 103 S.Ct. at 2328. Thus, the "totality-of-the-circumstances analysis ... permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip...." *Id.* at 234, 103 S.Ct. at 2330. Thus, the extreme reliability of an informant and his predictions of criminal activity may compensate for a failure to set forth completely the informant's basis of knowledge in a particular affidavit. *Id.* at 233, 103 S.Ct. at 2329. On the other hand, an explicit and detailed description of an alleged wrongdoing, along with a statement that an event was personally observed may warrant that greater weight be given to an informant's tip even if there is "*some* doubt" about the informant's reliability. *Id.* at 234, 103 S.Ct. at 2330 (emphasis added).

■ Despite this balancing test, however, the Supreme Court's "decisions applying the totality-of-the-circumstances analysis have consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Id.* at 240, 103 S.Ct. at 2333. In our opinion, some independent police investigation to corroborate allegations of criminal activity by an informant is an indispensable element for determining the reliability of the allegations when no other indicia of the informant's credibility or veracity are available. *See Spinelli*, 393 U.S. at 416, 89 S.Ct. at 589. Thus, a warrant application must reflect some basis for the magistrate to assess the informant's credibility or reliability. Absent some indication of the informant's veracity, we believe that a magistrate cannot find probable cause for issuing the warrant without "abdicating his constitutional function." *Spinelli*, 393 U.S. at 416, 89

S.Ct. at 589. *See also Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ In this case, the warrant application contained no information regarding the credibility of Sawicki, even though her affidavit was very detailed in other respects. In fact, her affidavit disclosed that Czuprynski had recently fired Sawicki from her position with his firm and alleged that he had assaulted Sawicki on the date he fired her. We believe that such statements tend to indicate the potential for unreliability in the affidavit, and indications of unreliability must be weighed in the totality-of-the-circumstances analysis. *Gates*, 462 U.S. at 234, 103 S.Ct. at 2330. Moreover, Officer Tait, who sought the warrant, failed to corroborate any aspect of Sawicki's affidavit by independent investigation. The only other information submitted to the magistrate in support of the warrant application were two warrants and returns showing that marijuana had been found in Czuprynski's possession in 1974 and 1983.

■ We believe that the warrant was facially deficient because it failed to establish any basis for the magistrate to conclude either that Sawicki was a reliable informant in general or that her allegations in this case were credible. "In dealing with probable cause, ... as the very name implies, we deal with probabilities." *Gates*, 462 U.S. at 231, 103 S.Ct. at 2329. The probable cause determination, therefore, looks for a *probability*, not a mere possibility, that contraband or evidence will be found during the search. *See id.* at 230, 103 S.Ct. at 2328. An essential component in finding that probability is a determination that the informant's allegations are truthful. The warrant application in this case contained no indication that Sawicki was a reliable informant or that her allegations were *probably* true. In fact, Sawicki's affidavit established a substantial basis for concluding that her allegations were untrue. Additionally, officials failed to corroborate Sawicki's allegations in any respect. We cannot accept, under the circumstances in

this case, that the wholly uncorroborated allegations of an employee who had been fired by the defendant and who was involved in a separate dispute with him over his discharge even remotely supports a determination of probable cause.[1] The magistrate, without information by which to assess Sawicki's veracity, could not constitutionally issue a warrant under the circumstances of this case, and the warrant issued was facially lacking in indicia of probable cause. Because the warrant was invalid and because Czuprynski did not consent to the search of his home or office, the search was unconstitutional.

■ Unfortunately, our conclusion that the search in this case was unconstitutional does not end our consideration of this case. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the court severely limited the operation of the exclusionary rule as a remedy for unconstitutional searches. Under *Leon*, evidence found in an unconstitutional search will not be excluded if the officer executing the search exhibits objectively reasonable reliance on the magistrate's determination of probable cause. *Id.* at 922, 104 S.Ct. at 3420. In restricting the scope of the exclusionary rule, the court relied on the rule's stated purpose "to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916, 104 S.Ct. at 3417. The court noted that this deterrence rationale behind the exclusionary rule loses much of its force when the official action in executing the warrant is pursued in *"complete good faith." Id.* at 919, 104 S.Ct. at 3419. Finally, the court emphasized that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918, 104 S.Ct. at 3418. We believe that this is such a case.

■ The court in *Leon* acknowledged that an officer could not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975)). In our opinion, a warrant application which contains no information from which a magistrate could conclude that the informant's information is reliable or credible is such a warrant. We do not believe that execution of a warrant cannot be in "complete good faith," *id.* 468 U.S. at 919, 104 S.Ct. at 3419, unless some information lends credence to the informant's allegations.

The warrant application in this case not only lacks information supporting Sawicki's truthfulness, but also it gives rise to the probability that Sawicki was making these allegations with a bad motive after Czuprynski fired her. Despite the indication that Sawicki might be an unreliable informant, Officer Tait failed to conduct any independent investigation to corroborate Sawicki's allegations. Furthermore, evidence indicates that some "judge-shopping" took place in the overall effort to obtain a search warrant for Czuprynski's home and office. Ultimately, on the advice of the Assistant Prosecutor who had previously been unsuccessful in obtaining a warrant, Tait took the application to a magistrate who had a past conflict with Czuprynski. Tait executed the warrant at Czuprynski's office even though he had made no effort to ensure that Sawicki's affidavit was credible. In our opinion, these actions do not fall within the good-faith exception of *Leon.* Because we believe that suppression of the evidence obtained in the searches of Czuprynski's home and office furthers the goal of deterring unconstitutional searches,[2] we hold that the district court's denial of the

---

1. We also note that Sawicki had not been to Czuprynski's home or office in at least a month. This, too, supports our determination that probable cause to believe that contraband or evidence would be found at Czuprynski's home or office on the date of the search did not exist.

2. We note that Officer Tait did not execute the warrant at Czuprynski's home. The court in *Leon*, however, noted that an officer could not rely on "colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search" and thereby invoke the good-faith exception. *Leon*, 468 U.S. at 923, n. 24, 104 S.Ct. at 3420, n. 24.

motion to suppress evidence obtained in the searches was improper.

Accordingly, the judgment of the district court is reversed. Because we reverse Czuprynski's conviction on the basis on an unconstitutional search and hold that the results of that search should have been suppressed, we need not address Czuprynski's remaining arguments.

KENNEDY, Circuit Judge, dissenting.

The District Court upheld the searches in this case on the basis of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The majority concludes that the magistrate lacked probable cause and that the affidavits in support of the search warrant were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Majority Op. at 1115 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975)). It reaches this conclusion on the basis that the warrant application "contains no information from which a magistrate could conclude that the informant's information is reliable or credible," *id.,* and that there was no information which lended "credence to the informant's allegations." *Id.*

The majority can only reach this conclusion by substituting its judgment of the informant's credibility for the magistrate and district judge. The majority also appears to hold that the officer should have refused to execute the warrant if he disagreed with the magistrate's credibility determination. I respectfully dissent.

As the majority points out, the warrant application rested primarily on information from Judith Sawicki, a lawyer and associate with defendant's law firm, until she was fired on February 21, 1992. She stated in her affidavit that defendant regularly used marijuana; that he smoked it in his office almost every day; and that she had smoked with him at his home. She had also purchased marijuana from him in January or February, 1992. The search warrant was issued March 18, 1992.

The basis of Sawicki's personal knowledge was clear. She had observed defendant use marijuana on almost a daily basis from January, 1991 to February, 1992. She had seen marijuana paraphernalia in his apartment as well as his office. The affidavit disclosed an established pattern of using marijuana almost daily for over a year. Sawicki admitted her own use with defendant. The affidavit then was contrary to her penal interest and thus, as the Supreme Court pointed out, bears intrinsic evidence of credibility. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Also, Sawicki appeared personally before the magistrate so he was in a position to judge her credibility, which we are not.

We do not have an unidentified informant whose credibility can only be judged by information previously provided. Sawicki was a lawyer. That one is licensed to practice law and relied on by courts, permitted to issue subpoenas and clearly knows the penalties of perjury, surely are factors that a magistrate is entitled to rely on when considering credibility. No less the police officer should be entitled to consider that fact.

The majority states that "[e]vidence in the record also indicates that Tait initially submitted the application to one of the judges of the 74th district who had previously declined to sign the records warrant" (the records warrant refers to a request for a warrant to search for Sawicki's files, which she sought to retrieve from defendant's office), and that "the judge again declined to issue a warrant." Majority Op. at 1115. The majority does not cite to what evidence it relies on. The record of the hearing on the motion to suppress is to the contrary. Tait testified at the suppression hearing as follows:

> Q. [Street—defendant's attorney] Prior to those two affidavits [Tait's and Sawicki's] being presented to Magistrate Boes, did you first present them to District Judge Newcomb?
>
> A. [Tait] No, sir, I did not.
>
> Q. [Street] Did you present them to any other District Judge?
>
> A. [Tait] No sir.

After Tait's testimony, defendant's attorney appears to have acknowledged that Tait acted in good faith.

> MR. STREET: Your Honor, I do not feel there is any additional testimony on those issues [Tait's good faith] because I feel, based on his testimony, it is apparent he was deliberately selected by the Bay County Prosecutor's Office because he did have a clean slate on these issues. He was functioning as their agent in good faith apparently.

The same testimony was given by Tait at trial.[1]

There is no basis for concluding that a reasonably trained law enforcement officer, in the place of Michigan State Trooper Tait, should have known the warrant was invalid. Indeed, defendant does not argue in his appellate brief that Tait did not rely on the warrant in good faith. Rather, he argues that *Leon* does not apply because the magistrate was not impartial.[2] Tait's awareness that there had been hard feelings or disagreements between the Bay County Prosecutor's Office and defendant, cannot be a basis for holding that Tait did not act in good faith.[3] Hard feelings and disagreements between prosecutors, officers and persons accused of a crime are probably the norm rather than the exception. Moreover, there was nothing in the materials submitted to the magistrate that relied upon information from the prosecutor's office except documentary evidence of earlier search warrant results which would not be affected by the prosecutor's office's feelings or disputes.

There was some evidence that supported Sawicki's statement that defendant regularly used and possessed marijuana. Submitted to the magistrate were three earlier search warrants of defendant's premises. Each search had uncovered evidence of marijuana possession, although defendant was acquitted in connection with one search.

There was no evidence that Tait was aware that defendant, then county auditor, had 13 years before attempted to have the magistrate fired from his position as Bay County purchasing agent. Tait testified at trial he was not familiar with defendant until the day he was sent by his superior to investigate this charge. He also testified at trial that he was not aware of the previous effort of Sawicki to get a search warrant of defendant's office to search for files she claimed were there.

The majority postulates that because the officer knew Sawicki had been fired and had a motive to cause defendant trouble, that she could not be credible. Persons with personal motives are often the source of very reliable information. To hold that a reasonable police officer had to know that Sawicki was lying under oath because she had been fired, would require the rejection of a good deal of evidence relied on daily by courts and juries. If no reasonable police officer can rely on this evidence for a search warrant, no juror would be permitted to do so either.

---

1. Although defendant, in his brief, states that the warrant was presented to Judge Newcomb, he cites no page in the record to support that statement and it is not supported in the record of the suppression hearing. Tait's testimony was that the papers were taken to the magistrate who issued the warrant as soon as they were completed.

2. In denying the motion to suppress evidence, the District Court held that defendant could not demonstrate the lack of neutrality of the magistrate by merely showing that 13 years before there had been a dispute between defendant and the magistrate while both were employed by Bay County. I agree that the evidence was too remote to demonstrate partiality on the part of a magistrate.

3. Tait testified:

   A. [Tait] I don't know if its fair to characterize them as hard feelings. Apparently there was disagreements.
   Q. Disagreements and disputes?
   A. [Tait] Disputes would probably be a better word for it.